Order Entered.

_____
David L. Bissett
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GREGORY SAVAGE and | ) | Case No. 1:20-bk-00169 |
| PENNY SAVAGE, | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| ALLIANCE COAL, LLC, A Delaware | ) | |
| Limited Liability Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AP No. 1:20-ap-00026 |
| | ) | |
| GREGORY SAVAGE and | ) | |
| PENNY SAVAGE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Pending before the court is a motion for judgment on the pleadings filed by Alliance Coal, LLC, a Delaware Limited Liability Company (the "Plaintiff"). Specifically, the Plaintiff contends that the judgment it obtained against the Debtors should be excepted from their Chapter 7 discharge under § 523(a)(2) of the Bankruptcy Code. Gregory and Penny Savage (the "Debtors") oppose the Plaintiff's motion because they claim that the debt is not one for "money, property, services . . . obtained by—(A) false pretenses . . . or actual fraud . . . ." under § 523(a)(2). Specifically, they claim that the undisputed facts show that they incurred the debt before any fraudulent act on their behalf that resulted in a judicial lien on their property; therefore, the debt is not one to be excepted from their Chapter 7 discharge based on actual fraud.

1

For the reasons stated herein, the court will deny the Plaintiff's motion for judgment on the pleadings.

## I. BACKGROUND

The Plaintiff is a Delaware limited liability company with its principal office located at 1717 South Boulder Avenue, Suite 400, Tulsa, Oklahoma, 74119. The Debtors are individuals residing at 70 Aleea Lane, Terra Alta, West Virginia, 26764. Mr. Savage was employed by the Plaintiff. During his employment, Mr. Savage suffered an injury and was to receive long-term disability benefits from the Plaintiff. However, these payments were to be reimbursed if Mr. Savage obtained social security benefits. Mr. Savage received social security benefits from September 2010 to July 2012 in the amount of $44,315.74, but he failed to reimburse the Plaintiff as required.

On June 5, 2013, the Plaintiff filed a complaint against Mr. Savage in the Circuit Court of Garrett County, Maryland (the "Maryland State Court") seeking reimbursement for the overpayment of disability benefits. On September 17, 2014, the Maryland State Court entered a judgment against Mr. Savage in the amount of $48,315.74 (the "Maryland State Court Judgment"). On March 8, 2017, the Plaintiff filed a second complaint against the Defendant to avoid and recover potentially fraudulent and other transfers in the Circuit Court of Preston County, West Virginia (the "West Virginia State Court") under the West Virginia Uniform Fraudulent Transfers Act (the "WVUFTA"). Specifically, the Plaintiff alleged that the Debtors fraudulently transferred the following property to avoid the Maryland State Court Judgment: (1) a camper; (2) real estate located at 70 Aleea Lane, Terra Alta, West Virginia, 26746 (the "Real Property"); and (3) a 2013 Ford truck.

Ultimately, the West Virginia State Court found that the transfers were in fact fraudulent transfers in accordance with the WVUFTA. Notably, the court found that the Debtors, as joint tenants, fraudulently transferred the camper and Real Property to Ms. Savage as the sole owner. Additionally, the court found that the Debtors fraudulently transferred their 2013 Ford truck titled in Mr. Savage's name when they traded it in for a 2014 Ford F-150 titled exclusively in Ms. Savage's name. Finally, the court concluded that each transfer of title was made with the actual intent to defraud the Plaintiff as to its claim for overpayment of disability benefits.

As a result, the West Virginia State Court ultimately avoided the transfers and granted the Plaintiff a judgment lien against: (1) the camper in the amount of $2,500.00, (2) the Real Property

in the amount of $14,720.17, and (3) the 2014 Ford F-150 in the amount of $675.14 (the "West Virginia State Court Judgment").  On February 21, 2018, the Debtors paid the Plaintiff in the amount of $3,242.12 to satisfy the judgment lien against the camper and the 2014 Ford F-150. Thus, only the lien against the Real Property remained.

On February 27, 2020, the Debtors filed their voluntary Chapter 7 petition.  At that time, the Debtors still owed the Plaintiff $14,720.17 to satisfy the outstanding judgment lien against the Real Property.  On February 28, 2020, the Debtors filed a motion to avoid the Plaintiff's judgment lien against the Real Property.  On March 24, 2020, the court granted the motion.  On June 4, 2020, the Plaintiff filed its complaint initiating this adversary proceeding.

## II.    STANDARD OF REVIEW

Fed. R. Civ. P. ("Rule") 12(c), made applicable in adversary proceedings by Fed. R. Bankr. P. 7012(b), provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Rule 12(c) motions are subject to the same legal standards applied to motions made under Rule 12(b)(6). *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir. 2012); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).  When a plaintiff seeks judgment on the pleadings, "the fact allegations of the answer are taken to be true, but those of the complaint are taken as true only where and to the extent that they do not conflict with those of the answer." *Corotoman, Inc. v. Cent. W. Va. Reg'l Airport Auth., Inc. (In re Corotoman, Inc.)*, Adv. No. 2:19-ap-02013, 2020 Bankr. LEXIS 779, at *5-6 (Bankr. S.D.W. Va. Mar. 26, 2020).  "The Plaintiff may not move for judgment on the pleadings where the answer raises issues of fact which if proved would defeat recovery." *Id*. (citation omitted).  The party moving for judgment has the burden of showing that no claim for which relief can be granted has been stated. 2 *Moore's Federal Practice* § 12.34 (Matthew Bender 3d Ed.).

## III.    DISCUSSION

The facts here appear to be undisputed.  The Plaintiff argues that the indebtedness associated with the judgment lien granted to the Plaintiff by the West Virginia State Court, but not the indebtedness arising under the Maryland State Court Judgment itself, should be excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code.  Specifically, the Plaintiff claims that the West Virginia State Court's finding that the Debtors violated the WVUFTA and engaged in actual

fraud constitutes a basis to determine that its remaining $14,720.17 judgment is non-dischargeable. For support, the Plaintiff cites to *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016). Particularly, it claims the Supreme Court held in *Husky* that a fraudulent conveyance scheme constitutes actual fraud for the purposes of § 523(a)(2)(A). Moreover, it claims that the West Virginia State Court Judgment establishes that the Debtors engaged in such a fraudulent conveyance scheme, intentional acts to defraud the Plaintiff. Therefore, in accordance with *Husky*, the Plaintiff claims that the debt should be excepted from discharge.

The Debtors oppose the Plaintiff's motion.[1] Specifically, the Debtors do not dispute the facts in this case, but rather they dispute that the debt was "obtained by" fraud. According to the Debtors, the Plaintiff's claim may be non-dischargeable only if there was fraud present at the time they incurred the debt. Notably, the Debtors do not contest that the West Virginia State Court found that they engaged in conduct intended to defraud the Plaintiff. However, the Debtors claim that the West Virginia State Court found the that they fraudulently conveyed property only after the Debtors incurred the debt (i.e., the Maryland State Court Judgment), and the Plaintiff merely obtained a judgment lien securing the debt as a result (i.e., the West Virginia State Court Judgment). Put another way, the Debtors claim that the West Virginia State Court encumbered their property with a judgment lien based on the alleged fraud, but that was only after they were already liable to the Plaintiff on the Maryland State Court Judgment. Thus, the Debtors contend that the debt was not obtained by fraud. For primarily the same reason, the Debtors also claim that *Husky* is not controlling.

The Bankruptcy Code offers "broad provisions for the discharge of debts, subject to exceptions." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018). The exceptions must therefore be narrowly construed in favor of providing the debtor with a fresh start. *Kabuto Tractor Corp., v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008) (quoting *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)). The party asserting non-dischargeability bears the burden by a preponderance of the evidence that the debt is non-dischargeable under § 523(a)(2)(A). *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

---

[1] The Debtors are pro se litigants in this case. Pleadings which have been filed by pro se litigants must be construed liberally and held to a less stringent standard than pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972)*; Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978). It is a court's obligation to ensure that the claims of a pro se litigant are given a "fair and meaningful consideration." *Palmer v. Decatur*, 814 F.2d 426, 428-29 (7th Cir.1987) (internal quotation omitted). Therefore, the court will construe the Debtors' pleadings liberally.

The Bankruptcy Code prohibits debtors from discharging *debts* for money, property, services, or credit obtained by *actual fraud*. 11 U.S.C. § 523(a)(2)(A) (emphasis added). Notably, Congress defined "debt," "lien," and "judicial lien" in the Bankruptcy Code. However, it did not define "actual fraud." "The term 'debt' means liability on a claim,"11 U.S.C. § 101(12), while "[t]he term 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). "The term 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

In the context of "actual fraud," the Supreme Court clarified the application of § 523(a)(2)(A) by concluding that the inclusion of "actual fraud" within the provision indicates a clear Congressional intent to except from discharge debts incurred through fraudulent actions distinct from false representations, including fraudulent conveyance schemes. *Husky*, 136 S. Ct. at 1586. As a result, a debt is excepted from discharge based on "actual fraud," the objecting party must prove: (1) the debtor committed actual fraud; (2) the debtor obtained money, property, services, or credit by the actual fraud; and (3) the debt arises from the actual fraud. See *id*. at 1587-88.

As to the first element, the debtor must have committed actual fraud. The Supreme Court held that the term "actual fraud" has "two parts: actual and fraud." *Husky*, 136 S. Ct. at 1586. The word "actual" denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Id*. (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878)). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Id*. (quoting *Neal*, 95 U.S. at 709). Thus "actual fraud" is anything that counts as "fraud" and is done with wrongful intent. *Id*. (quoting *Neal*, 95 U.S. at 709). Ultimately, the Court found that the term "actual fraud" encompasses all forms of fraud such as a fraudulent conveyance scheme. *Id*. at 1586.

Regarding the second element—that the debtor obtained money, property services, or credit by the actual fraud—the Court found that nothing in the text of §523(a)(2)(A) that supports an additional requirement that the debt at issue "result from fraud at the inception of a credit transaction." *Id*. at 1589. *Husky*, however, was a somewhat unique case because the debtor, Daniel Lee Ritz, Jr., fraudulently conveyed assets from one company he controlled to other companies that he owned, and he subsequently filed for bankruptcy. *Id*. at 1585. For all intents and purposes,

the debtor was the transferor and transferee. The debtor, as a director and 30% owner of Chrysalis Manufacturing Corp. ("Chrysalis"), drained Chrysalis of assets it could have used to pay its creditors and transferred those assets to other entities the debtor controlled. *Id*. After the debtor filed his petition for Chapter 7 bankruptcy, a creditor, Husky International Electronics, Inc. ("Husky"), sought to hold him personally liable for Chrysalis' debt. Additionally, Husky claimed that the debtor's intercompany-transfer scheme constituted actual fraud under § 523(a)(2)(A) of the Bankruptcy Code. *Id*. The case was remanded for further proceedings consistent with this opinion. *Id*. at 1590. Ultimately, Husky succeeded on its veil-piercing theory and obtained judgment against the debtor.

Notably, the Court stated that in a fraudulent conveyance such as the one in *Husky*, the transferor does not obtain money or property by the fraud, but the recipient of the transfer—who, with the requisite intent, also commits fraud—can obtain assets by his or her participation in the fraud. *Id*. at 1589. If the recipient later files for bankruptcy, the debts "traceable to" the fraudulent conveyance will be non-dischargeable. *Id*. However, "[s]uch circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy." *Id*.

The third element requires that the debt arise from the actual fraud. *See Cohen v. De La Cruz*, 523 U.S. 213, 218 (1998); *see also Husky*, 136 S. Ct. at 1587-88. "Once it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge." *Cohen*, 523 U.S. at 218; *see also Husky*, 136 S. Ct. at 1589 ("any debts 'traceable to' the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A)" (internal citation omitted)). Nonetheless, "[a] plain reading of the subsection demonstrates that Congress excepted from discharge . . . only debts in which the debtor used fraudulent means to obtain money, property, services, or credit." *In re Smith*, Ch. 7 Case No. 19003914-BH, Adv. No. 20-80004-HB, 2020 Bankr. LEXIS 2497, at *14 (Bankr. D. S.C. Apr. 17, 2020) (quoting *Nunnery In re Rountree*, 478 F.3d at 219.).

Here, the court finds it appropriate to deny the Plaintiff's motion for judgment on the pleadings under § 523(a)(2)(A). Although the Debtors do not contest whether they committed actual fraud, the court finds that a *debt* was not created by—nor did it arise from—actual fraud. Clearly, the Bankruptcy Code prohibits the Debtors from discharging *debts* for money obtained by actual fraud. For instance, if the Maryland State Court Judgment was based upon fraud, that would

6

more evenly fit the *Husky* analysis. However, the Plaintiff does not make that allegation; nor would it be supported by the record. Rather, the Plaintiff is attempting to except a *judgment lien* from the Debtors' Chapter 7 discharge after the West Virginia State Court found that the Debtors engaged in fraud by conveying assets beyond the Plaintiff's reach.

While it may undoubtedly be a subtle difference, debts and judicial liens are distinguishable under the Bankruptcy Code. The former is a liability. The latter is a lien, a secured interest, obtained by a judgment. It is undisputed that the Debtors incurred a liability to the Plaintiff on September 17, 2014 in the amount of $48,315.74. Notably, however, the Debtors incurred this debt before fraudulently transferring their Real Property. Subsequently, on November 3, 2017, the West Virginia State Court granted the Plaintiff a judicial lien against the Debtors' Real Property in the amount of $14,720.17 to secure the debt previously established by the Maryland State Court Judgment. The judicial lien, itself, is not a debt. Therefore, it cannot act as an additional basis to hold the original debt as non-dischargeable, nor has the Plaintiff provided any authority to hold otherwise. Had the West Virginia State Court granted the Plaintiff a money judgment, a separate liability, in conjunction with the judicial lien, the outcome here may be different. However, that is not the case in this matter. Because a judgment lien is distinct from a debt, the court concludes that there is no debt for money obtained by actual fraud; nor did a debt arise from actual fraud.

Moreover, the court recognizes the Supreme Court's holding in *Husky*; however, this case is factually distinguishable based on the context outlined above. Unlike in *Husky*, the Plaintiff here obtained a judgment against the Debtors for an overpayment of disability benefits in the Maryland State Court. Subsequently, the Debtors transferred their own property with the actual intent to defraud the Plaintiff with respect to the Maryland State Court Judgment. After further litigation in the West Virginia State Court, the court granted the Plaintiff the judgment lien at issue. The record does not support a finding that the Debtors engaged in fraud leading to the Maryland State Court Judgment.[2] Therefore, in light of the standard of review recited above, the Plaintiff's motion cannot be granted because it has not made the requisite showing.

---

[2] In its reply, the Plaintiff expressly states that it does not claim that the indebtedness arising from the Maryland State Court Judgment should be held as non-dischargeable, but only the judgment lien associated with the West Virginia Court Judgment due to the Debtors' fraudulent transfer to avoid paying the Maryland State Court Judgment.

## IV.    CONCLUSION

This Rule 12(c) motion is different than most. Specifically, the Plaintiff filed a motion for judgment on the pleadings. According to its motion, the Plaintiff argued that the judgment lien granted to it by the West Virginia State Court, but not the indebtedness arising under the Maryland State Court Judgment itself, should be excepted from discharge. In response, the Debtors, acting pro se, did not dispute any material facts in this case, nor did they file any cross motion for judgment on the pleadings. However, based on the court's analysis herein, the court will dismiss the case *sua sponte* because the Plaintiff failed to plead a plausible claim upon which the court can grant relief.

Therefore, based upon the foregoing and consistent with Fed. R. Bankr. P. 9021, the court will enter a separate order denying the Plaintiff's motion for judgment on the pleadings and dismissing the adversary proceeding.